LANDON and MAYHAM, JJ., concurred.

Judgment and order reversed, new trial granted, costs to abide event.

---

In the Matter of the Petition of WALTER J. EATON, as Assignee for the Benefit of Creditors of JAMES MOIR, for the Instruction of the Court in Regard to the Payments to be Made Among the Creditors Preferred by the Assignment Made by Said JAMES MOIR.

*Assignment for creditors — rule as to* pro rata *distribution, under chapter* 503 *of* 1887, *among preferred creditors.*

An instrument of general assignment for the benefit of creditors conveyed the property of the assignor, in trust, to convert the same into money, " and out of the proceeds of such sales and collections:

"*First.* To pay and discharge the just and reasonable expenses, costs and charges of executing this assignment, and of carrying into effect the trust hereby created, together with the lawful commissions to the party of the second part for his services in executing said trust, and also to make payments required by chapter 328 of the Laws of 1884, as amended by chapter 283 of the Laws of 1886.

"*Second.* To pay New York State National Bank, Albany, a draft drawn by J. K. Post & Company. * * *

"*Third.* To pay to the said New York State National Bank, Albany, any and all loss or damage which the said New York State National Bank, Albany, has now sustained, or may hereafter sustain, by reason of the non-payment of certain promissory notes indorsed by the party of the first part and discounted. * * *

"*Fourth.* To pay to George Moir the sum of nine thousand dollars, and to John McTague the sum of eighteen hundred dollars. * * *

"*Fifth.* And after fully paying and discharging all the aforesaid debts, as above provided, the said party of the second part shall pay all and singular all other debts and liabilities of the party of the first part."

By chapter 503 of the Laws of 1887, providing that preferences, other than the wages of employees, shall be valid only to the amount of one-third in value of the assigned estate, it is directed that should said one-third be "insufficient to pay in full the preferred claims, to which, under the provisions of this section, the same are applicable, then said assets shall be applied to the payment of the same *pro rata* to the amount of each said preferred claims."

One-third of the assigned estate proved insufficient to pay in full the debt owing to George Moir, preferred by the fourth paragraph of the assignment, and the debts mentioned in the paragraphs of the assignment preceding such fourth paragraph thereof.

*Held,* that, under the assignment, the debts preferred were to be paid in the order in which the paragraphs in which they were mentioned were, respectively, numbered.

That, in such order, the debts mentioned in each paragraph were to be paid in full before any payment was made upon the indebtedness mentioned in the succeeding paragraph.

That the words "*pro rata*" in the statute applied, in a case like the present one, where the one-third of the assets, which might be applied in payment of preferred claims, was not enough to pay all the preferred creditors, to the creditors embraced in some one class, and not to any right of preference or payment between the different creditors in the several classes of preferred creditors.

APPEAL by George Moir from so much of an order made at Special Term, and entered in the office of the clerk of Albany county on the 29th day of July, 1890, as provided as follows :

"*Third.* One-third in value of the assigned estate, after deducting such costs and expenses, wages and salaries, from such assigned estate, shall be applied to the payment in full of the other preferred claims in the order stated in the general assignment made to said Walter J. Eaton ; that is to say, out of such one-third the preferred claims of each successive class, in the order in which such classes are set forth and numbered in the instrument of assignment, are to

be paid in full before any part of such third is applied to the payment of the claim mentioned in any succeeding class; and when the moneys so applicable to the claims set forth in any one class are insufficient to pay all the claims of that class, then such moneys so applicable to that class shall be distributed *pro rata* among all the claimants having claims which are preferred in such class."

The assignment in this case was made under date of November 8, 1889, by James Moir to Walter J. Eaton, and by the terms thereof the estate of the former was conveyed to said Walter J. Eaton, in trust, nevertheless, to take possession of the same and sell the same with all reasonable dispatch and convert the same into money, and also to collect all such debts and .demands hereby assigned as may be collectible and with and out of the proceeds of such sales and collections,

- *First.* To pay and discharge the just and reasonable expenses, cost and charges of executing this assignment and of carrying into effect the trust hereby created, together with the lawful commissions to the party of the second part for his services in executing said trust, and also to make payments required by chapter 328 of the Laws of 1884, as amended by chapter 283 of the Laws of 1886.

*Second.* To pay New York State National Bank, Albany, a draft drawn by J. K. Post & Company upon and accepted by said party of the first part for the sum of two thousand ($2,000) dollars, which is due January 11, 1890, and also a draft drawn by J. K. Post & Company upon and accepted by the said party of the first part for the sum of fifteen hundred dollars ($1,500) which is due January 13, 1890, both of which drafts have been discounted by said New York State National Bank, Albany, for the benefit of the said party of the first part, the proceeds being deposited to his account and also a sight draft drawn by said party of the first part on J. K. Post & Company, for the sum of twenty-six hundred and twenty-eight dollars and forty-four cents ($2,628.44), which has been presented and duly protested.

*Third.* To pay to the said New York State National Bank, Albany, any and all loss or damage which the said New York State National Bank, Albany, has now sustained, or may hereafter sustain by reason of the non-payment of certain promissory notes indorsed by the party of the first part and discounted for his benefit by the said New York State National Bank, Albany, the proceeds being

placed to his credit, which said notes are now owned and in the possession of the New York State National Bank, Albany.

*Fourth.* To pay to George Moir the sum of nine thousand dollars ($9,000), and to John McTague the sum of eighteen hundred ($1,800) dollars; to John Benoit the sum of five hundred ($500) dollars; to Captain Joseph Yartan the sum of four hundred and four dollars and fifty cents ($404.50); to Captain Goudreau, of the boat Richard Retallick, the sum of six hundred and fifty dollars ($650).

*Fifth.* And after fully paying and discharging all the aforesaid debts as above provided, the said party of the second part shall pay all and singular all other debts and liabilities of party of the first part, and if the residue of the said proceeds remaining be not sufficient to pay and discharge all such other debts and liabilities in full, then the said party of the second part shall apply the said residue of such proceeds ratably and in proportion to the respective amounts thereof. * * *

*A. R. Dyett,* for the appellant, George Moir.

*Matthew Hale,* for the New York State National Bank, respondent.

*M. T. Hun,* for the petitioner, respondent.

LEARNED, P. J. :

This is an appeal from an order giving construction to the assignment, made on application of the assignee, and on notice to George Moir, a preferred creditor, who is the present appellant.

The appellant's first position is that, by the terms of the assignment itself, there is no preference created among the several classes of preferred creditors, designated as first, second, third and fourth, but that all of those classes stand on an equality by the terms of the assignment.

The assignment, in the usual form, directs the assignee to convert the assets into money, and with and out of the proceeds, " first, to pay and discharge the just and reasonable expenses," the lawful commissions and the payments required by chapter 328, Laws of 1884, as amended by chapter 283, Laws of 1886. Now, it is very evident that the payments provided for by this clause are to be made in preference to those of the second clause. Expenses and

commissions must clearly be paid before any preferred creditors. In like manner the employees protected by the statute, named as above in the assignment, are to be paid before other creditors. It, therefore, necessarily follows that the payments provided for in this first clause must have a preference over all those named in succeeding clauses.

The assignment proceeds, "second, to pay New York State National Bank, Albany," and specifies two drafts drawn by J. K. Post & Company, on and accepted by the assignor and discounted by said bank, and a draft drawn by the assignor on said J. K. Post & Company, protested.

It then proceeds, "third, to pay the said New York State National Bank, Albany, any and all loss and damage" which said bank may sustain by the non-payment of certain promissory notes.

It then proceeds, "fourth, to pay to George Moir the sum of nine thousand dollars;" and to other persons certain sums mentioned. The fifth clause is for the payment of all other debts.

Now, if the contention of the appellant were correct, there would have been no reason for making two classes such as the second and third. The payee was the same in both. And if, as the appellant urges, the numbering of the classes did not indicate the order of preference, all the debts payable to the New York State National Bank would have been included in one class. There could be no other reason for making two classes except the wish of the assignor that the Post drafts should have a preference even over other drafts held by that bank. It seems to us that the meaning of the assignment is unquestionable, and that the preferred creditors were intended to have preference among each other according to the order of these respective classes.

The language of the court in *Greenfield's Estate* (24 Penn. St., 232), cited by the appellant, that "it is believed that no case can be found where it has been held that the prefix of a numeral alone gives priority," hardly applies here. There is more than the prefix of a numeral. There is a direction to pay, first, such and such debts, second, such and such. When one is directed first to do a certain thing, and second another, it is not a forced construction to understand that the first is to be done in full before the second is attempted.

The case of *Colgin* v. *Redman* (20 Alabama, 651), cited by appellant, held that debts in the first class were to be paid before those in the second class; only that all in such class were to share *pro rata*. That is our view in this case. Moir, the appellant, although his name is the first mentioned in the fourth class, has no preference over others in that class. But the creditors in the first, second and third classes have, respectively, preference according to their classes, and all of them before those of the fourth class. No doubt would probably ever have risen as to this were it not for the question we now come to consider.

Chapter 503 of the Laws of 1887 provides that any preference, other than for wages of employees, shall not be valid except to the amount of one-third in value of the assigned estate, and should said one-third be " insufficient to pay in full the preferred claims to which, under the provisions of this section, the same are applicable, then said assets shall be applied to the payment of the same *pro rata* to the amount of each said preferred claims."

The assignee has in his hands, applicable to debts, about $25,000. The amounts preferred in the second class are about $6,100; the amount in the third class does not appear; the amount in the fourth is about $12,000. The appellant insists that the one-third of the assets shall be applied *pro rata* to all of the claims named in the second, third and fourth classes. The learned court below held that such one-third should be applied first *pro rata* to the creditors in the second class, and the balance *pro rata* to the claims in the other classes successively. We think the construction of the learned justice was correct. This statute was not intended to interfere with anything but the amount which might be given to preferred creditors. It did not intend to limit or control the power of the assignor to the extent of one-third of the assigned estate, to dispose of it as he chose, giving preference as it might please him. The doctrine of this State has been, and is, except as modified by that statute, that an insolvent debtor may make any preferences which he may choose. As to one-third of his property the debtor may do this still. In this present case, according to the estimate of the assignee, the one-third is sufficient at least to pay in full the first and the second class. If the assignor had made no third or fourth class, then the

persons named in those classes would have been among the creditors not preferred, and the first and second would have been paid in full. Now, when the assignor has directed that these creditors of the third and fourth classes shall be paid after the first and second, but before all others, can it be supposed that he intended that in case of an insufficiency of assets those of the third and fourth should be paid *pro rata* with the second? Certainly the addition of more classes, after the second, was not intended, under any circumstances, to put such added classes on an equality with the second.

The provision in the statute is to pay *pro rata* when the one-third is insufficient to pay in full the preferred claims to which such one-third is applicable, and the question is to what claims it is applicable. The one-third is applicable just as the assignor directed, and in the order in , which he directed. He may be presumed to have known the law, and, perhaps, to have known something of the extent of the estate. In giving a preference to the second and third classes over the fourth, he must have anticipated that it was possible that there would not be enough for all the preferred creditors. And he did not say that, in case of such deficiency, all the preferred classes (except the first) should share *pro rata*. He practically said the contrary. There is no analogy between this case and that of legacies; for the reason that in this assignment a preference is expressed. In a will there is usually no preference expressed. But when, in a will, a priority is given, either by principles of law or by express language, effect is given to it.

In the present case priority is given by express language. It is not taken away by the statute. The statute interfered only with the extent of the debtor's right of preference, not with the manner in which he should exercise that right. The words *pro rata* apply when there is not enough of the one-third to pay all the creditors in some certain class; and not to the right of preference between several classes.

The order is affirmed, with costs.

LANDON and MAYHAM, JJ., concurred.

Order affirmed, with costs.